UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KOMARU RAMONI, ) | CASE NO. 1:21-cv-2072 |
| ) | |
| PLAINTIFF, ) | JUDGE SARA LIOI |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| CUYAHOGA METROPOLITAN ) | |
| HOUSING AUTHORITY, ) | |
| ) | |
| DEFENDANT. ) | |

Before the Court is defendant Cuyahoga Metropolitan Housing Authority's ("CMHA") motion for summary judgment. (Doc. No. 37 (Motion).) Plaintiff Komaru Ramoni ("Ramoni") opposed the motion (Doc. No. 41 (Opposition)) and CMHA replied (Doc. No. 43 (Reply)). For the reasons set forth herein, CMHA's motion for summary judgment is granted, and this case is dismissed.

**I.  BACKGROUND**

Ramoni worked as a protection officer for CMHA from March 16, 2012, until CMHA terminated his employment effective October 13, 2020. (Doc No. 34-1 (Deposition Transcript of Komaru Ramoni), at 30, 41; *see also* Doc. No. 34-15 (Termination Letter), at 2; Doc. No. 37-1 (Declaration of Chief Andrés González) ¶ 19.[1]) Ramoni's termination followed an incident that occurred on September 4, 2020, at one of CMHA's high rise buildings ("Willson Tower") while Ramoni was working in the building as a protection officer. (*See* Doc. No. 34-1, at 82, 88.)

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic docketing system.

On that date, at approximately 7:40 p.m., Ramoni was in a security booth in the lobby of Willson Tower. (*Id.* at 93.) Surveillance video footage from the lobby showed that, around that time, a man entered the vestibule of the lobby, unsuccessfully attempted to open the locked lobby door, and then knocked on the door. (Exhibit 1(C), at 7:40:35 (*see* Doc. No. 38 (Notice of Manual Filing of Exhibit (1)(C) to Motion for Summary Judgment)); *see also* Doc. No. 34-1, at 97.) Shortly thereafter, a female tenant used her key fob to enter the building and, upon walking through the lobby door, was pushed from behind by the same man. (Exhibit 1(C), at 7:40:54–7:40:58; *see also* Doc. No. 34-1, at 96.) The female tenant then walked up to the security booth. (Exhibit (1)(C), at 7:41:00; *see also* Doc. No. 34-1, at 96–98.) After a few seconds, the man began attacking the female tenant in front of the security booth. (Exhibit (1)(C), at 7:41:08.) In the surveillance video, the man can be seen on top of the female tenant, choking and hitting her for over one minute. (*Id.* at 7:41:08–7:42:27.) Approximately forty-five seconds after the assault began, Ramoni can be seen on the video exiting the security booth and approaching the assailant, who was still physically assaulting the female tenant. (*Id.* at 7:41:52–7:42:00; *see also* Doc. No. 34-1, at 105.) Approximately thirty seconds after Ramoni approaches the man, the man stops his attack and both he and the woman stand up off the ground. (Exhibit (1)(C), at 7:42:27.) Two minutes later, CMHA police officers arrive, and the man is handcuffed and taken away. (*Id.* at 7:44:43.) It is undisputed that Ramoni never physically intervened in the assault but rather made a radio call to report the incident. (*See* Doc. No. 34-1, at 106–07.)

During CMHA's investigation of the incident, Ramoni said that he did not intervene in the assault because of a directive he received from his union representatives, at the direction of his ultimate superior, CMHA Police Department Chief González ("Chief González"), to not

2

physically intervene in alterations, but instead to call for police backup.[2] (Doc. No. 41-2 (Declaration of Komaru Ramoni) ¶¶ 8–10; see also Doc. No. 34-10 (CMHA Investigation Memo), at 4–5.) Chief González denies ever giving such a directive to anyone. (Doc. No. 37-1 ¶¶ 12–14.)

After CMHA's investigation, Ramoni was provided notice of a pre-disciplinary conference whereby Ramoni's charged conduct violations related to the incident would be discussed. (Doc. No. 34-1, at 144–45; Doc. No. 34-11 (Pre-Disciplinary Conference Notice).) On October 13, 2020, a pre-disciplinary conference was held, and Ramoni was given an opportunity to speak to the charged violations. (Doc. No. 34-1, at 179, 185–86.) CMHA subsequently terminated Ramoni's employment with CMHA effective October 13, 2020, based upon Ramoni's admitted conduct on September 4, 2020. (Doc. No. 34-15, at 2; Doc. No. 37-1 ¶ 19.)

Ramoni subsequently grieved his termination, and the grievance was denied. (Doc. No. 34-1, at 191, 195–96; Doc. No. 34-16 (Grievance Letter).) Ramoni's union did not pursue Ramoni's grievance through arbitration. (Doc. No. 34-1, at 191.) Ramoni also filed an unfair labor practice charge with the Ohio State Employment Relations Board (the "SERB"), which was also denied. (Doc. No. 34-1, at 225–28; Doc. No. 34-18 (Dismissal of Unfair Labor Practice Charge).) Prior to filing this civil action, Ramoni also filed a charge of discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission. (Doc. No. 34-1, at 230–31; Doc. No. 34-19.)

---

[2] CMHA suggests that Ramoni changed his explanation for not intervening several times before the CMHA investigator: first saying he did not intervene because he was afraid of facing discipline for use of force because of a previous use of force disciplinary violation, then blaming the victim, and then, only after conferring with union representatives, claiming he did not intervene because of a directive from Chief González. (*See* Doc. No. 37, at 14.) On a motion for summary judgment, this Court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). As such, for purposes of this motion, this Court accepts Ramoni's explanation that he did not intervene because of a directive he believed came from Chief González.

On September 28, 2021, Ramoni initiated this suit in the Cuyahoga County Court of Common Pleas. (Doc. No. 1-1.) On November 2, 2021, CMHA removed the action to this Court. (Doc. No. 1.) On February 9, 2022, Ramoni filed a first amended complaint alleging (1) unlawful termination on the basis of national origin and religion and (2) unlawful discrimination based on a hostile work environment in violation of Ohio Rev. Code § 4112.02, Ohio Rev. Code § 4112.052, and 42 U.S.C. § 2000e et seq. ("Title VII"). (*See generally* Doc. No. 14.)

Following discovery, CMHA filed the instant motion for summary judgment. (Doc. No. 37.) Ramoni filed an opposition (Doc. No. 41), and CMHA filed a reply (Doc. No. 43). The matter is now ripe for this Court's review.

## II.  LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190

4

(1991). In most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). "The trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003). Under this standard, "the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment [motion]." *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004) (quotation marks and emphasis omitted) (citing *Anderson*, 477 U.S. at 247–48).

**III.    DISCUSSION**

Although not entirely clear, Ramoni's amended complaint appears to allege two claims of employment discrimination under Title VII and Ohio law: one claim based on unlawful termination and one claim based on hostile work environment. (*See* Doc. No. 14 ¶¶ 14, 16, 20.) Title VII prohibits employers from engaging in "unlawful employment practices," including discharging an employee or discriminating against an employee "with respect to [his] compensation, terms, conditions, or privileges of employment, because of [the employee]'s race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, Ohio Rev. Code § 4112.02(A) prohibits an employer from discriminating against an individual on a variety of bases, including national origin and religion. The Ohio Supreme Court has held that federal case law interpreting Title VII is generally applicable to employment discrimination claims brought under Ohio Rev. Code § 4112.02. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rts. Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (holding that claims brought under Title VII and Ohio state law are examined using the same legal framework).

As noted, Ramoni's amended complaint appears to raise a claim of employment discrimination based on unlawful termination and another claim based on hostile work environment. (*See* Doc. No. 14 ¶¶ 14, 16, 20.) In its summary judgment motion, CMHA contends that Ramoni has failed to establish a *prime facie* case of employment discrimination under either basis.[3] (Doc. No. 37, at 1–2.) The Court will address each in turn.

---

[3] In a single, two-sentence footnote, CMHA also seems to contend that, because Ramoni's employment with CMHA was "governed by a collective bargaining agreement" and his "claims arise from his rights under that agreement," "[Ramoni's] claims are under the exclusive jurisdiction of SERB and not this Court." (Doc. No. 37, at 10 n.4.) "Ohio courts have held that the SERB has exclusive primary jurisdiction to resolve unfair labor practice charges alleging

### A. Unlawful Termination

To establish a *prime facie* case of employment discrimination based on termination, a plaintiff must show that

> 1) he is a member of a protected class; 2) he was qualified for the job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action [(was discharged)]; and 4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of his protected class.

*Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014).

Once a plaintiff establishes a *prima facie* case, the burden of production then shifts to the defendant to overcome the presumption of discrimination by coming forward with evidence of a legitimate, non-discriminatory reason for its actions. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013). If the defendant articulates a non-discriminatory reason, then the defendant has successfully rebutted the presumption of discrimination that was raised by the *prima facie* case. The plaintiff must then present evidence that the defendant's proffered reason was mere pretext for unlawful discrimination.[4] *Id.*

CMHA focuses on the fourth prong of the initial analysis, contending that "[t]here is no

---

violations of Ohio Rev. Code Chapter 4117." *Shoemake v. Mansfield City Sch. Dist. Bd. of Educ.*, 61 F. Supp. 3d 704, 737 (N.D. Ohio 2014) (collecting cases). However, Ramoni's only claims properly before this Court are his claims alleging violations of Title VII and Ohio Rev. Code § 4112.02 and § 4112.052. Thus, whatever the SERB's exclusive jurisdiction over claims related to Ohio Rev. Code Chapter 4117, this Court finds that it retains subject matter jurisdiction over Ramoni's civil rights claims because they are independent of Ohio Rev. Code Chapter 4117. *See Shoemake*, 61 F.Supp.3d at 737–38 (citing *Keller v. City of Columbus*, 797 N.E.2d 964 (Ohio 2003) (finding that "SERB does not have exclusive jurisdiction over every claim that can somehow be cast in terms of an unfair labor practice" and that claims "independent of R.C. Chapter 4117" are not within the exclusive jurisdiction of SERB), and *Gilbert v. Corr. Reception Ctr.*, No. 2:07-cv-624, 2008 WL 4347231 at *7–8 (S.D. Ohio Sept. 19, 2008) (finding that, to the extent the [c]omplaint could be construed as alleging defendant union violated Title VII by treating plaintiff less favorably that white union members, SERB does not have exclusive jurisdiction over such claims)).

[4] Courts use this burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), when, as here, there is no direct evidence of discrimination based on any of the protected characteristics.

evidence that [Ramoni] was treated differently from similarly situated individuals outside the protected class or was replaced by someone outside the protected class. Further, [Ramoni] cannot produce any evidence that CMHA's legitimate, non[-]discriminatory reason for terminating [Ramoni's] employment was pretextual." (Doc. No. 37, at 12.)

Ramoni completely ignores his burden to establish a *prime facie* case of discrimination. His opposition brief focuses almost exclusively on whether his employment was terminated in violation of the terms of the applicable collective bargaining agreement between CMHA and Ramoni's employee union—a claim not even raised in his complaint and, thus, not at issue in this suit.[5] (*See* Doc. No. 41, at 4–7.) In doing so, Ramoni admits (more than once) that he "was terminated for not intervening in a physical altercation between a female CMHA resident and an intoxicated male." (Doc. No. 41, at 9.) Notwithstanding these seeming admissions, Ramoni maintains that firing him for failing to intervene in the assault was pretextual and CMHA really terminated his employment because of his national origin and religion. (*Id.*)

Ramoni's contention that CMHA's stated reason for his termination was pretextual puts the cart before the horse. His allegations of pretext are irrelevant because he has failed to establish a *prime facie* case of discrimination, a required initial step. *Laster*, 746 F.3d at 726–27. Ramoni has not cited any evidence that would establish either (1) he was replaced by a person outside of his protected class or (2) he was treated less favorably than a similarly situated individual outside of his protected class.

First, Ramoni testified that he was unaware of anyone replacing him. (Doc. No. 34-1, at

---

[5] A plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. *Tucker v. Union Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005).

316.) In fact, CMHA did not hire anyone to replace Ramoni. (Doc. No. 37-1 ¶ 19.) Thus, Ramoni cannot establish that he was replaced by someone outside of his protected class.

Second, while Ramoni does not directly address what evidence he contends supports his *prima facie* case of discrimination, he contends generally that one of his union representatives, and fellow protection officer ("Officer Rice"), testified that a different protection officer ("Officer Harris") "followed the exact same directive as [ ] Ramoni, refusing to enter into a physical altercation between residents and instead calling for police backup . . . [y]et Officer Harris was not terminated for her actions. (Doc. No. 41, at 7.) But Officer Rice's actual testimony is not as helpful as Ramoni's summary suggests. Officer Rice did not, and could not, testify that Officer Harris' and Ramoni's situations were similar because Officer Rice did not personally observe (either firsthand or by viewing a recording) the incident involving Officer Harris or the incident involving Ramoni. (Doc. No. 35-1, at 21–23 (testifying that she could not say whether the incidents were the same).) *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) ("[T]he plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.'" (emphasis omitted)). Officer Rice testified that she did now know whether the fight witnessed by Officer Harris involved a tenant being "thrown to the floor, punched and choked" in her presence. (Doc. No. 35-1, at 22–23.) The only similarities Officer Rice could reliably draw were that both incidents involved some sort of fight and the protection officers called for backup.[6] (*Id.* at 21–22.) Even so, Ramoni has not pointed to any evidence that

---

[6] Officer Rice initially testified that Officer Harris "didn't intervene" in a fight (Doc. No. 35-1, at 21), but Officer Rice then testified that she was not in the building, did not observe the fight personally, and did not view any video recording of said fight. (*Id.* at 22–23.) Thus, Officer Rice's own testimony suggests it is improbable that she possesses any personal knowledge as to whether Officer Harris intervened in the fight, and the Court is unaware of any evidence in the record that establishes otherwise. When deciding a motion for summary judgment, "[t]he Court has discretion to disregard those facts which would not be admissible in evidence, and to rely on those facts which are competent

9

establishes Officer Harris was not a member of his protected class (non-native-born American citizen and Muslim). As such, Ramoni has failed to cite *any* evidence that establishes a *prime facie* case of unlawful termination based on national origin or religion and, for this reason alone, summary judgment is properly entered in CMHA's favor as to Ramoni's claim of unlawful termination based on national origin and religion.

But even if Ramoni had established a *prime facie* case of unlawful termination based on national origin or religion, CMHA has provided a legitimate, non-discriminatory reason for its actions: Ramoni's failure to intervene in the violent assault of a tenant during his shift and right in front of him. (Doc. No. 37, at 13.) Ramoni contends that this reason was pretextual. (Doc. No. 14 ¶ 15; *see also* Doc. No. 41, at 8.) To establish pretext, a plaintiff may show that the defendant's proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003).

As noted, Ramoni spends almost his entire opposition brief arguing that his failure to intervene in the assault should be excused because he was following directions from Chief González. (*See* Doc. No. 41, at 4–7.) Because Chief González disputes ever giving such a directive, Ramoni contends there is a genuine issue of material fact as to his unlawful termination claim. (*Id.* at 9.) But this Court need not determine if there is a genuine dispute as to whether Chief González gave a non-intervention direction because Ramoni has not put forth a single shard of evidence that

---

evidence." *Williams v. U.S. Postal Serv.*, No. 1:08-cv-892, 2010 WL 11538139, at *5 (S.D. Ohio Sept. 8, 2010) (citing *Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir. 1966), and *Sutton v. U.S. Small Bus. Admin.*, 92 F. App'x 112, 118–19 (6th Cir. 2003)); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

would establish his non-intervention did not actually motivate CMHA's decision to terminate him.[7]

For starters, Ramoni seems to concede in his opposition brief that CMHA terminated him because of the incident on September 4, 2020. (*Id.* at 6 ("In the present case, it has been established that Mr. Ramoni was fired solely because he did not intervene in the physical altercation between two residents on the evening of September 4, 2020 at Willson Tower.").) So, while he admits that CMHA was motivated to terminate him because of his failure to intervene, he argues CMHA had no "cause"[8] to terminate him because he was following a directive from Chief González, and, thus, because there was no cause, CMHA must have been discriminating against him on the basis of his national origin and/or religion. (*See id.* at 8.) The sum of Ramoni's "evidence" that CMHA discriminated against him is Ramoni's personal belief that it is "obvious" that CMHA discriminated against him. (*See* Doc. No. 34-1, at 217, 221–22; *see also id.* at 223–24 "Q: So you think because you were terminated because of the event of September 4th, that is obvious discrimination? A: Yeah. I mean, why not? There is proof of that. Q: The evidence of discrimination is simply the termination itself? A: Yeah.").) Ramoni's unsubstantiated assertions and conjecture are insufficient to create a genuine issue of material fact to defeat a well-supported motion for summary judgment. *See Lujan*, 497 U.S. at 888. "The court's duty to view the facts in

---

[7] Even if it is true that Chief González gave a non-intervention directive that applied to the incident on September 4, 2020, and Ramoni was indeed just following that directive, but CMHA decided to terminate Ramoni anyway, that does not mean Ramoni was terminated because of his national origin or religion. Ramoni must provide *some* evidence to at least suggest that his national origin or religion was the reason for his termination—but he has not provided *any*. *See Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) ("[T]he party opposing the motion may not rely solely on the pleadings and must adduce more than a mere scintilla of evidence; if the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law.").

[8] As mentioned *supra*, despite Ramoni focusing on this issue, any claim that CMHA violated the relevant collective bargaining agreement is not properly before this Court.

11

the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009); *see also Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of . . . discrimination.").

Having viewed the evidence in a light most favorable to Ramoni, the Court concludes that Ramoni's federal and state unlawful termination claims fail as a matter of law, and CMHA is entitled to summary judgment on the same.

### B. Hostile Work Environment

As an initial matter, CMHA contends that, to the extent Ramoni's complaint alleges a claim of hostile work environment, it must be dismissed because Ramoni did not bring such a claim before the Ohio Civil Rights Commission. This Court agrees. The record shows that Ramoni did not raise a claim of hostile work environment (*i.e.*, "harassment") before the Ohio Civil Rights Commission (Doc. No. 34-19, at 1; *see also* Doc. No. 34-1, at 230–31.) Ramoni neither checked the "harassment" box in the charge nor mentioned any harassment in the narrative portion of the charge. (Doc. No. 34-19.) For this reason alone, any claim of hostile work environment before this Court must be dismissed. *Russ v. Memphis Light Gas & Water Division*, 720 F. App'x 229, 236–37 (6th Cir. 2017) (granting defendant's summary judgment motion on plaintiff's Title VII retaliation claim because plaintiff had failed to exhaust administrative remedies for claim where plaintiff neither checked box for retaliation in EEOC charge or mentioned facts related to retaliation in charge narrative).

But even if Ramoni had a claim of hostile work environment properly before this Court,

12

this Court would have to dismiss it because Ramoni has failed to establish a *prime facie* case. To establish a *prima facie* case of a hostile work environment under Title VII, a plaintiff must demonstrate that "(1) [he] belongs to a protected class; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on [religion] [or national origin]; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action." *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020) (some alterations in original).

The entirety of Ramoni's "evidence" supporting his hostile work environment claim is comprised of two sentences in his opposition brief: "Ramoni was subjected to ridicule by his coworkers regularly because of his African accent. While he did his best to 'laugh it off,' this hazing created a difficult work environment for him." (Doc. No. 41, at 9 (citing Doc. No. 34-1, at 214, 215, 217).) Even taking this as true, Ramoni has failed to establish *a prime facie* case of hostile work environment because it is undisputed that CMHA was never made aware of the "ridicule by his coworkers regularly because of his African accent." Ramoni testified that he never told CMHA about any alleged incidents of discrimination. (Doc. No. 34-1, at 155–58, 215, 245, 286.) CMHA had in place an anti-harassment policy whereby an employee could report discriminatory or harassing conduct. Ramoni admitted knowledge of this policy and its procedures. (*Id.* at 44–45, 155.) But, by his own admission, Ramoni never availed himself of the avenues to report harassment. (*Id.* at 156–58, 215, 245, 286.)

Viewing the evidence in a light most favorable to Ramoni, the Court concludes that Ramoni has simply not identified any evidence that would allow a reasonable jury to infer that CMHA subjected Ramoni to a hostile work environment. Ramoni's federal and state hostile work

13

environment claims fail as a matter of law, and CMHA is entitled to summary judgment on the same.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in full and the claims in plaintiff's complaint are dismissed with prejudice. This case is closed.

**IT IS SO ORDERED.**

Dated: January 30, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**